United States v. Kaspereit. It is docket 19-6188. And Mr. Cannon, when you're prepared to begin, please do so. Thank you, Your Honor. May it please the court, after careful consideration of the case to the bar, the jury return the verdict of not guilty as the count for the indictment. In cases where the evidence is close, it is essential that the jury is properly instructed as to each required element defenses that they're to consider. In this case, the knowledge of being a prohibited person was not properly instructed as to count one and kept you for the jury, which warrants a new trial. First, I'd like to direct the court's attention to a case of U. S. Versus some more that was decided in April of this year by the 10th Circuit. In that case, the court determined that plain air existed because there is not an instruction as the intent elements and a reasonable probability existed that the jury may have returned a verdict of not guilty. Had the right instructions been provided at the case of bar, considering that case of some or decided this year by the 10th Circuit, there is a reasonable probability that a different verdict would have been returned if the jury instructions had comported with the decision of her life. How do you say that? How do you say that? With there being a separate conviction under 9 22 86 Your Honor's defense position that considering the cases as a whole, specifically the Martinez case 2000 apologize. The Martinez case decided by the 10th Circuit in 2009, where the court held specifically the de novo, whether, as a whole, the district court jury instructions correctly stated the governing law and provided the jury with ample understanding of the issues implicable standards. It is the defendant's position that due to the lack of proper instructions, comporting with life as the cast one, two and three, although three was an acquittal that the jury was not able to have an ample understanding pursuant to 10th Circuit jurisprudence or that decision by the court that the jury was not able to consider properly the jury instructions. So there is a knowledge aspect to count one. We do have to confess that. However, under 10th Circuit precedent, it is the defendant's position that the court did not provide the jury the opportunity to properly consider the necessary knowledge element that was dictated by writing on that point. Not sure how you get there when trial counsel declined the court's recommendation or certainly willingness to have a special interrogatory on the verdict form for that very point. So this isn't a case where the defense wanted this or didn't know about it. Instead, it's one where the defense precluded or at least advised the court not to solicit that from the jury. So it doesn't make a big difference. Your Honor, I think that the defense has a proper response to that, and I'd like to raise two issues with the court. First, under the case of Burke decided in 2019 by the 10th Circuit, the court held that the review of legal objections to jury instructions is de novo. And although defense counsel at the trial level objected, the Raif decision had not been decided. It was up for appeal, and that decision is a legal decision by the court. It is our position that this court should make a de novo review of the law and determine that the instruction was improper, despite trial counsel's argument against. Additionally, I'd like to raise an issue as to... Wasn't the instruction the very one proffered by the defendant? Yes, Your Honor, but I would again urge that it was prior to the decision of Raif, and with that, the law was not before the court to consider what the proper law was at the trial phase. I mean, as far as that goes, trial counsel should have been able to access and know that those arguments were being made on these possession cases, and so the argument was available. Yes, Your Honor. However, it is the defense position that the trial court was burdened with providing the proper law and instruction, and this court has the opportunity under plain error review to determine what the proper instructions would be. The second point I was attempting to raise in response to Judge Phillips' question is, in the government's brief, there's a reference to an invited error. However, as stated in that footnote by Ms. Anderson in her brief, it states that that does not apply with settled law that subsequently changes the law, and the decision of Raif was decided after the trial court, and it is our position that that subsequent action warrants reconsideration of the proper jury instructions. I'd like to turn the court's attention next to this specific... Let me stop you for a minute. So, if we're looking at this under plain error, the Raif case was observing a different section of 922 than what you're talking about. Would the error be clear and obvious in that case? Your Honor's defense position that the error is clear and obvious in the case at bar, similar to the case at Raif. Although the elements in the specific law at issue are different, it falls under the auspice, and it is our position that the interpretation by the legislature or statutory interpretation of those sections warrant application by the Supreme Court's opinion beyond that minor subsection. It's our position that the intention of Raif is that there is both a requirement of knowledge of possession of the firearm and a requirement of knowledge of being part of a prohibited class. And the reference to multiple or prohibited class, not just singular, that prohibited class, it is our position that it applies to all the classes listed, including the issue of prohibited person as it relates to violation of protective order. Is that a response to your question, Your Honor? Yes, it is. Do you agree that you're gonna have the burden in this case of showing that if the instruction was Oh, I lost my train of thought. I'm gonna let you go ahead. Thank you, Your Honor. It is our position, maybe to end that thought and questions that under this precedent of Simpson, that there's a but for error analysis that if there is a reasonable probability of a different outcome, then proper jury instructions are warranted. I'd like to briefly walk the court through what we consider to be the proper considerations under the four elements of the plane error test. First, an error if the jury was misled. And again, I direct the court's attention to a quite old case of Pappard from the 10th Circuit, where the court held that when that required element is missing, we have an error. I believe the case of Barther is an error due to lack of the knowledge of being a prohibited person as it relates to count one account to second to the issue being plain. The court stated in 2018 in the case of solace that must be clear and obvious. Knowledge of being a prohibited person is clear and obvious. It had a substantial impact, which turns me to the third point affects a substantial right. The reasonable probability of that but for error does create the chance for a different outcome. Again, turning to the Simpson precedent, it is in our position that the jury were able to view that and consider that complying with the Martinez precedents I referenced a minute ago about the ample  outcome. Well, there's a lot of evidence there from the ex wives and the defendant's own conduct that he knew that he was that there was a protection order. So I don't know about whether you make the reasonable probability test or not. And didn't I have to find that to get it? Find him guilty on count one. They define a knowledge element. Your honor, Seymour. However, they did not have to find the knowledge of being part of the court's attention. Specifically, George Seymour to the published opinion. You wrote and Hey, 18 3 55 2019 of the 10th Circuit, where the determination was under 9 22 G that is proper to vacate and dismissed because of insufficient knowledge. It's the defendant's contention that there is a serious dispute as the factual evidence turn. The specifically my client's former counsel advising him that you have a determination of assets and the district court allowing him to maintain possession of those firearms. Mr Casper took steps to try and ensure that he was not a prohibited person. And again, I would turn the court's attention in the case of life were both in the opening statement by appellate counsel before the United States Supreme Court and in the opinion itself. There's a specific focus on knowingly modifying the verb of violates and is our position that not only is the count to which I think is uncontested. The jury instruction is improper and under plain air warrants reconsideration in a new trial, but also to count one is to the more contentious issue of that violation that must knowingly violate being a prohibited person. And your honor, Judge Seymour, I would contend that the evidence is sufficient to warn a dispute that proper jury instructions would give Mr Casper the opportunity for a fair trial on those under the settled precedents. I've stated from the 10th Circuit. What? What do you have? Um, other than your client's testimony? Your honor, we have substantial evidence that the jury was able to consider. However, could not put it through the lens of proper jury instructions for their. I want to know what I know. You think it's substantial, but I want to know what it was. You have your client's testimony and what else? What else do you have? Because his attorney didn't bear out his testimony. His attorney said, I don't remember telling him that you don't. His attorney testified of the fact that he was called and asked by Mr Casper if he could purchase a firearm. His attorney told him that you're not a felon. I believe you can have a gun. Miss Anderson may correct me if my verbiage is not perfect. Additionally, there was the evidence of the decree itself that say that this is the entire corpus of the case, and he was granted possession of those firearms. There's also the reference to the victim protective order that was initially done ex parte that the final order indicates that it will be terminated upon the divorce. Uh, here I need to stop you because this is a point of confusion, and I think you're blurring two things. I understand that you have an argument. The evidence is insufficient that he knew about the protection order or that. But and that's one thing. You can argue the X Y is more believable or whatever else, and we can decide that. But the second point is you're saying there's insufficient evidence that, in fact, there was a valid protection order prohibiting from having a firearm. And on that one, it seems to me you're doing something unusual that I haven't seen, which is you're saying there's insufficient evidence of a fact that he agreed to a trial. He never contested that the protection order was valid at trial, and so I'd ask for your authority to say that you can make an insufficient of evidence argument based on a fact that he had agreed to below. Your Honor's our position that under the right decision, the key analysis is knowledge at the time contemporaneously, and it's our position he lacked that knowledge specifically turn the court's attention to the young 2006 specific time. He lacked that knowledge when he bought the firearms. Is that what you're saying? Yes, Your Honor. He lacked the knowledge on the day that he purchased those firearms, December of 2017. As I recall, his second wife testified that they had had a conversation not too long before that about him being under the protective order because it impacted her relationship with her Children. Yes, Your Honor. That that was testimony. However, I would again turn the court's attention to the issue of misleading the jury about what the proper laws in the case of paper from 1997. This court held that air arises if considering the instructions as a whole, the jury's been misled in his defense position that the jury was misled as to the knowledge requirement that's clearly stated in the rape decision. Well, things were getting very blurry. If you say knowledge that there was a valid protection order, but I didn't know that. I okay, got that. But if you say that there was no not that he didn't have knowledge that the protection order itself was no longer legally in effect, then that's something entirely different. And that is a fact that he went along with during the district court proceeding. And so to say insufficient evidence of the fact that I agreed with the district court, I don't get that. Yes, Your Honor. And our stronger argument, which we believe is sufficient for this court to grant relief under plain air analysis, is that he did not know contemporaneously with the time that he made that purchase that he was a prohibited person. Respectfully, I'd like to reserve the reason for what reason he didn't have that knowledge. What knowledge knowledge? Knowledge that he had a protective order in place based on this balance of counsel. A valid order. Okay, that argument I get this way. Okay, sure. Thank you. Thank you, Miss Anderson. Oh, yes. Thank you, Your Honor. May it please the court. I am Mackenzie Anderson, and I'm here on behalf of the United States. I think there are two important points that are dispositive as to the sufficiency of the evidence and the rule 29 challenge. The court has essentially, uh, already spoken to both of these. But the first is that Mr. Casperite testified at trial that he purchased the two firearms in 2017, and he continued to possess them from January of 2018 to February 26th of 2018, even when he knew at that point and admits that he knew that he was subject to the McCormick protective order because he reached out to his attorney and filed a motion to dismiss it, and it was pending during that time. His testimony alone is sufficient evidence for count to and covers all of the elements, and that can be found in volume three of the appendix at pages 121 to 122. At least that's the top number of the pages. Um, but the second point is that as the court brought attention to in finding Mr Casperite guilty on count one, the jury considered Mr Casperite's claim that he didn't know about the protective order when he bought the guns in and they found that he was subject to the protective order and nevertheless lied on the A. T. F. Form that he completed at Academy. The jury did so based on overwhelming evidence that he knew about the protective order. On December 7th of 2017, there was testimony from his McCormick who had gotten the protective order that they were frequently discussing dismissal of that protective order. He was asking her to agree to it, and she was refusing. There was testimony from Miss Carson, his girlfriend at the time that because of issues with her ex husband, Mr Casperite's protective order was an issue, and she remembers talking to him about it from when she met him in February of 2016 and especially from the August to October 2017 time period right before he bought these guns. And in fact, when he bought the guns and told her he bought the guns, the first words out of her mouth were, How could you do that with a protective order? And he didn't deny that the protective order was still in place. He said he completed the forms. They ran a background check, and they let him buy the gun. Nothing here. And I should also mention Mr Casperite's own attorney said that he never told Mr Casperite that the protective order was not in place until it actually was not in place in February of 2018. So the only evidence that supports Mr Casperite's story that he did not know about the protective order is from Mr Casperite himself, who is not a reliable narrator and admitted several times in his testimony that he lied about various different things, and the court ultimately gave an obstruction of justice enhancement for lies that Mr Casperite had made while he was at trial. Those two points that he admitted to knowing about the protective order in January and February of 2018 and that the jury found he had knowledge of the protective order because he lied about it resolved both the sufficiency of the evidence and the rule 29 issues that Mr Casperite raises because he admitted to his knowledge status for the purpose of count two, and that is buttressed by the jury's well supported conviction on count one, which required a finding that Casperite knew he was subject to a he for the law. The jury's verdict shows the result would not have changed if the court make any type of credibility finding with respect to the defendant prior to sentencing. Do you ever comment on the record that he didn't find incredible or I don't believe that he made that finding and a credibility determination about Mr Casperite until the sentencing when we had briefed the issue of obstruction of justice as a sentencing enhancement, and it was teed up for the court to make a determination. Yes, Your Honor. And as the court has mentioned, from our perspective, the Rahif issue is an invited error. Mr. The United States was following the Rahif briefing and the oral argument that had occurred and was concerned that Rahif would go the way that it would. And so we're the ones who asked for the special interrogatory with the Rahif instruction as to knowledge of his status, and the defendant actively opposed the court issuing that special interrogatory. So can I ask you a question on that, which is his position is I object to that because I wasn't charged with that element. My question is, post Rahif, does the United States charge the crime exactly the same way anyway, and then seek a special interrogatory? Is the pattern instruction the same? Are you aware of a court that has changed the instruction from the way that it was instructed in this case? I believe that the instruction post Rahif would be the defendant knowingly possessed a firearm. That's the first element. And the second element would be the defendant knew he was subject to a protective order at the time of the possession. And I may have misspoken. What I was talking about was the indictment language. Would the indictment language be the same post Rahif? I believe the indictment would have specifically charged him with knowledge of the protective order in the language of the indictment. Then what's wrong with this argument? He says, Why should I agree to have anything on a verdict form that wasn't charged with? Well, Your Honor, under the plain error analysis, we can see that there was an error, and we can see that that error was plain. However, Mr Casper, I cannot satisfy the third and fourth prongs of the plain error standard. So the third prong, obviously, is that it would have a likelihood of changing the result. And we know that it wouldn't change the result here because the jury already found that he had knowledge of the protective order as part of its conviction on count one. And there are cases that we cited in our brief on page 49, in which courts have made exactly that finding that the defendant does not get a new trial because the jury's verdict of guilty for making a false statement on an ATF form was sufficient to establish the Rahif knowledge element. I was speaking to the invited error argument that you're making. And I'm with you all the way until you tell me that next time you indict the same offense, it's not going to be in the same statutory language. And then I wonder about invited error. I understand, Your Honor. So I think our argument is that really the invited error, or waiver argument, go to the fourth prong of the plain error standard, in that he affirmatively opposed a special interrogatory that would resolve this issue, and would get the jury's specific finding as to the Rahif knowledge requirement for count two. And so because of that, then the failure to have that instruction doesn't impugn the fairness or integrity, or the public reputation of the proceeding, because he chose not to have the special interrogatory. And under the plain error standard, our argument is that he doesn't meet the third prong anyway, because the jury made the required findings. And Mr. Kasperite admitted in his own testimony, that he knew about the protective order from January to February of 2018, when he continued to possess the firearms. If there are no further questions on Rahif, I'd be happy to speak to some of the other issues that are up on appeal. The other remaining issue... Pardon me? Don't know what that was. The only remaining issue is Mr. Kasperite's sentence, which is amply supported by the court's careful consideration of the 3553A factors, including the protection of the public, the nature of the offense, Mr. Kasperite's history and characteristics and deterrence, as reflected in both the district court statement of reasons and the sentencing transcript. And I just want to highlight for the court, that I think it's important that the district court here had closely evaluated Mr. Kasperite's history and characteristics, the nature of the offense, and the seriousness of the danger he posed to the community, not just at sentencing. He had done that, the district court had made all of those findings in relation to a motion to revoke the pretrial release of the defendant. And docket number 51, which is included in the United States Supplemental Appendix, is the district court's denial, or the district court's denial, of Mr. Kasperite's actions. And I just want to highlight for the court, that the district court had made all of those findings in relation to a motion to revoke the pretrial release of the defendant. And docket number 51, which is included in the United States Supplemental Appendix, is the district court's denial of Mr. Kasperite's actions. And docket number 51, which is included in the United States Supplemental Appendix, is the district court's denial of Mr. Kasperite's actions. And the district court denied that motion to reopen the detention hearing. So, under inconsistency of Mr. Kasperite's danger to the community, which supported and, and provides a broader context for the district court's decision to very upward, and sentence Mr. Kasperite to the statutory maximum. And I do also want to point out one last thing is that Mr. Kasperite doesn't even address the 3553A factors. So we've also raised the argument that he may have waived his substantive reasonableness argument, because he treats it as a departure as opposed to a variance. And that is based on the Walker decision from this court in 2019. That being said, if the court has no further questions, we will rest on our brief and ask the court to affirm Mr. Kasperite's judgment and sentence. Thank you for your argument. Mr. Cannon, you have some rebuttal time remaining. Thank you, Your Honor. In conclusion, I'd just like to again address the court's attention to the Trurio decision. In that case, the court found there was plain error. However, a new trial is not granted. And the important distinguishing factor there is in Trurio, the defendant had six felony convictions, was more than aware of his circumstance, which we believe is distinguishable from Mr. Kasperite, which is our position. There's clear evidence from the record that there's a question as to his knowledge of being a prohibited person at the pertinent times, in fact, in the case. I'd also like to draw the court's attention to the case of U.S. v. Singh from 2020, which is from another circuit, but referenced in the appellee's letter to the court subsequent to briefing, where they found that overwhelming center-of-status element, although overwhelming, was uncontested, and that the jury would have no probability of reaching a different verdict because there is no plausible basis for concluding that error existed. It is our contention there's a substantial difference in evidence here, and a jury looking at the matter as a whole may have considered something other than what they decided. Also, as to the plain errors first and second amongst or in effect his rights, as the jury may have had a different outcome if they had considered the proper element under Rafe of the knowledge of contemporaneous being a prohibited person. Finally, to the final issue of the substantive reasonableness of the case, it is our position that with his criminal record being Category 1, no prior felony convictions, that a sentence to the maximum four times the sentencing guidelines was inappropriate. And under the fourth factor, under U.S. v. Roberson, the degree of departure is our position that is unreasonable, and the court should grant either resentencing or, more appropriately, a new trial with the proper jury instructions under Rafe. With that, I respectfully request that the court grant my client a new trial under proper jury instructions or, alternatively, a remand for proper sentencing under the considerations presented in my brief. Thank you. Thank you, counsel, for your arguments. The case is submitted.